**In the Matter of Donald F. DeCICCIO.**

**No. 2013–275–M.P.**

Supreme Court of Rhode Island.

Oct. 17, 2013.

David Curtin, Chief Disciplinary Counsel, for Petitioner.

Edward C. Roy, Jr., North Kingstown, for Respondent.

Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**ORDER**

This attorney disciplinary matter comes before us pursuant to Article III, Rule 6 of the Supreme Court Rules of Disciplinary Procedure. On August 19, 2013, the Disciplinary Board of the Supreme Court (board) forwarded to us a decision finding that the respondent, Donald F. DeCiccio, had violated the Supreme Court Rules of

Professional Conduct. The board has recommended that we impose a public censure as a sanction for that misconduct. We directed the respondent to appear before this Court at its conference on September 18, 2013, to show cause, if any, why he should not be disciplined. Having heard the representations of the respondent, his attorney, and this Court's Disciplinary Counsel, we determine that cause has not been shown.

The following are the facts determined by the board at a hearing held on August 7, 2013. The respondent is a sole practitioner with an office in Johnston, Rhode Island. Through friends and internet research he became aware that attorneys could offer their services, and be paid a fee, to act as an "attorney pay master" to facilitate certain types of commodities transactions. In essence, as understood by the respondent, an attorney pay master acts as an escrow agent who receives and holds the funds due to a commodities broker and then disburses the funds to the broker upon receiving confirmation that the funds have been earned. The attorney pay master receives a fee for acting as this escrow agent.

The respondent created a website and offered his services to act as such an attorney pay master. Shortly thereafter the respondent was contacted via e-mail by a person claiming to be "Rajat Ohri."[1] Ohri identified himself as a commodities broker who was interested in availing himself of the respondent's services. The respondent performed a cursory investigation by inter-net to determine whether Ohri was a legitimate broker, and concluded that he was.[2]

The respondent entered into an agreement with Ohri to act as his attorney pay master, to receive funds on his behalf, and to disburse those funds in accordance with Ohri's instructions. In return, the respondent would receive 2 percent of those funds as his commission for providing these services. The respondent provided Ohri with the necessary information for funds to be directly deposited into the respondent's client account.

Either prior to or shortly after entering into this agreement, the respondent spoke to Disciplinary Counsel seeking advice as to whether it was permissible or advisable to perform these services. Counsel advised the respondent that he strongly recommended that he not engage in these services, that attorneys were being specifically targeted by scam artists using the internet, and that he was most likely becoming involved in a scam. The respondent chose not to heed that advice.

Between September 10, 2012 and October 17, 2012 there were fourteen wire transfer deposits and one cash deposit into the respondent's account, totaling $3,434,918. The respondent did not inquire as to the source of these funds.[3] Shortly after the receipt of each deposit, Ohri would contact the respondent via e-mail with instructions to transfer the funds, minus the respondent's commission, to various accounts located in financial institutions around the world, including the

---

1. Whether "Rajat Ohri" is a real person, a real person whose identity had been misappropriated, or is a fictitious name is unclear from the record. For purposes of this order we will refer to "Ohri" as that is how he was known to the respondent. We draw no conclusion that a real person by that name was actually involved in this matter.

2. We note that the internet can be a source of useful information. Unfortunately, not everything on the internet is reliable.

3. It would appear that Ohri was defrauding other individuals, who would deposit funds into the respondent's account. DeCiccio had no contact with any of those individuals, and was unaware of Ohri's fraudulent scheme.

Cook Islands, St. Vincent and the Grenadines. The respondent made no effort to determine whether Ohri was entitled to receive these funds, and did not question the legitimacy of these transactions. He earned commissions totalling $68,734 in slightly over a month for performing no other service than following Ohri's directives to transfer funds.

On October 22, 2012, the respondent became aware that Ohri was defrauding other individuals and was using the respondent's client account to facilitate that fraud. He immediately ceased acting as an attorney pay master, and he cooperated with inquiries received from federal and state law enforcement officials, as well as Disciplinary Counsel. No criminal charges were filed against the respondent. He has deposited $50,000[4] of the funds he received into the Registry of the Superior Court to pay any claims made by victims of Ohri's fraud. Additionally, his malpractice insurance carrier has also deposited some funds into that account as well.

The board concluded that the respondent violated Article V, Rules 1.1[5] and 1.15(d)[6], of the Supreme Court Rules of Professional Conduct. It is unclear to us from these facts whether the respondent had an attorney-client relationship with any of the parties to these transactions. However, the respondent did not raise this issue, and we will defer to the board's conclusion. Therefore, we adopt the board's conclusion that the respondent violated Rule 1.1.

We have no hesitation in finding the respondent had violated Rule 1.15(d). As the commentary to Rule 1.15 makes clear, lawyers should hold funds or property of others "with the care required of a professional fiduciary." Here, the respondent provided unlimited access to an individual he had never met, other than via e-mail contact, to deposit funds into his client account. He received deposits into that account from unknown sources, and he made no effort to determine whose funds he had received. He then blindly followed instructions to forward those funds to accounts around the world. A clearer breach of fiduciary duty would be difficult to imagine.

Having concluded that the respondent has committed misconduct, we must fashion an appropriate sanction. We believe that the respondent's conduct resulted from a lack of judgment rather than evil intent. Professional discipline serves two purposes: protecting the public and maintaining the integrity of the profession. *In re Karns*, 62 A.3d 523, 525 (R.I.2013) (mem.); *In re McBurney*, 13 A.3d 654, 655 (R.I.2011) (mem.). We agree with the board that those purposes can best be

---

4. The rest of the funds had been spent by the respondent before he became aware of Ohri's fraudulent scheme.

5. Article V, Rule 1.1, of the Supreme Court Rules of Professional Conduct entitled "Competence," provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

6. Article V, Rule 1.15, of the Supreme Court Rules of Professional Conduct entitled: "Safe-keeping property," provides, in pertinent part:

"(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such a property."

served in this matter by imposing the sanction of a public censure.